**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Ederwis Javier Rodriguez-Leal, et al.,

Petitioners,

v.

Markwayne Mullin, et al.,

Respondents.

No. CV-26-06153-PHX-JCH

**ORDER**

The Court has reviewed Petitioners' Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction. (Doc. 2.) The Court will deny the request for injunctive relief without prejudice.

## I. Background

Petitioners are four Venezuelan citizens detained by U.S. Immigration and Customs Enforcement ("ICE") at the Eloy Detention Center and the Florence Correctional Center. (Doc. 1 ¶¶ 11–14.) Each alleges he or she entered the United States between 2021 and 2023, and immigration authorities released or paroled him or her. (*Id.* ¶¶ 31, 40, 52, 63.) Petitioners further allege they were granted Temporary Protected Status ("TPS") under Venezuela's 2023 designation, re-registered under the January 17, 2025 extension, and are members of the National TPS Alliance ("NTPSA"). (*Id.* ¶¶ 33, 45, 57, 65, 69.) ICE re-detained Petitioners between February and June 2026. (*Id.* ¶¶ 35, 46, 58, 70.) On August 28, 2026, Petitioners filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 asserting four claims: (1) their detention violates 8 U.S.C. § 1254a(d)(4), which

prohibits detaining TPS holders based on their immigration status; (2) their detention violates substantive due process because the government previously determined they posed no flight risk or danger and circumstances have not materially changed; (3) their re-detention without a pre-deprivation hearing violates procedural due process; and (4) their warrantless re-arrests violate the Fourth Amendment. (*Id.* ¶¶ 97–115.)

Petitioners' § 1254a claim rests on the December 10, 2025 declaratory judgment in *National TPS Alliance v. Noem* ("*NTPSA*"), No. 25-cv-01766-EMC (N.D. Cal.), which Petitioners contend precludes Respondents from disputing Petitioners' TPS statuses. (*Id.* ¶¶ 3, 87–90.) Petitioners seek immediate release or, alternatively, bond hearings, as well as an injunction against further detention while the *NTPSA* set-aside order and declaratory judgment remain in effect. (*Id.* ¶¶ 7, 99; *id.* at 23–24.) Together with the Petition, Petitioners filed the Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction now before the Court, which asks the Court to order their immediate release. (Doc. 2 at 2–3, 26.) Thereafter, on October 8, 2026, Respondents filed a Status Report indicating Petitioner Marin Espinoza is scheduled for removal. (Doc. 12.)

## II. Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 65, a party may seek injunctive relief if it believes it will suffer irreparable harm during the pendency of an action. There are two types of injunctions available under Rule 65: TROs and preliminary injunctions. Each type of request is governed by the same substantive standard. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). More specifically, each type of "injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (cleaned up); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right." (citation omitted)).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to

succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. However, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (cleaned up); *see also Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024) ("Serious questions are issues that cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation. Thus, parties do not show serious questions when they raise a merely plausible claim, nor can a district court forgo legal analysis just because it has not identified precedent that places the question beyond debate. This 'less demanding' merits standard requires serious factual questions that need to be resolved in the case." (cleaned up)). Additionally, "[w]here, as here, the government opposes a preliminary injunction, the third and fourth factors merge into one inquiry." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021).

## III. Discussion

As noted, the first *Winter* factor requires a showing of a likelihood of success on the merits or at least serious questions going to the merits. Petitioners' primary argument is that they hold valid TPS and therefore "shall not be detained . . . on the basis of [their] immigration status." 8 U.S.C. § 1254a(d)(4). Critically, Petitioners do not contend that their TPS remains in effect independent of the *NTPSA* litigation. Rather, they argue that, as members of NTPSA, they may enforce the December 10, 2025 declaratory judgment in *Nat'l TPS All. v. Noem*. That judgment declared unlawful the Secretary's vacatur of the January 17, 2025 extension and the termination of Venezuela's 2023 designation. Respondents, Petitioners argue, are therefore precluded from disputing their TPS status.[1]

[1] To the extent Petitioners also rely on the *NTPSA* set-aside order, 798 F. Supp. 3d 1108 (N.D. Cal. 2025), *aff'd*, 166 F.4th 739 (9th Cir. 2026), the analysis is the same. Petitioners invoke that order for its preclusive effect (Doc. 2 at 14 n.2), and the mutuality requirement applies regardless of which judgment is invoked. Petitioners also acknowledge the

(Doc. 2 at 13–14 (citing *Nat'l TPS All. v. Noem*, No. 25-cv-01766-EMC, 2025 WL 3539156, at *3 (N.D. Cal. Dec. 10, 2025)).) Petitioners' theory, in other words, is one of issue preclusion.

Issue preclusion applies only where, among other things, the issue was decided in a prior action involving the same parties or their privies. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015). That requirement is particularly important here because Petitioners seek to invoke preclusion offensively against the federal government. Private litigants may in some circumstances invoke preclusion against a party with whom they were not in privity. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979). But "nonmutual offensive collateral estoppel simply does not apply against the government in such a way as to preclude relitigation of issues such as those involved in this case." *United States v. Mendoza*, 464 U.S. 154, 162 (1984); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 852 n.13 (2025).

Petitioners were not named plaintiffs in *NTPSA*. Therefore, to bind Respondents to the *NTPSA* declaratory judgment, they must show they stand in privity with a party to that action. But the only basis they offer is their asserted membership in NTPSA, which sued on behalf of its members. *See Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1081-82 (9th Cir. 2003).

Two other judges in this District have addressed materially similar petitions, and their decisions turned on this point. In *Bello Oropeza v. Noem*, the court gave preclusive effect to the *NTPSA* declaratory judgment where the petitioners "provide[d] evidence that they [were] all members of NTPSA" and the respondents did not dispute that evidence. The court emphasized that the preclusion it applied was therefore mutual. *Bello Oropeza v. Noem*, No. CV-26-01251-PHX-SHD (JFM), 2026 WL 1597192, at *5 & n.3 (D. Ariz. May 21, 2026). In *Sanchez Herrera v. Noem*, by contrast, the court denied relief where the

---

Supreme Court stayed that order. (*Id.* at 11.)

petitioner made no showing that he was a member of NTPSA "when the *NTPSA* complaint was filed or when the December 10 judgment was issued." No. CV-26-00625-PHX-MTL (JFM), 2026 WL 800721, at *10 n.7 (D. Ariz. Mar. 12, 2026). In distinguishing *Sanchez Herrera*, the *Bello Oropeza* court explained that a petitioner who does not present evidence of membership is "not entitled to the benefit of the declaratory judgment," because "nonmutual offensive collateral estoppel may not be advanced against the Government." *Bello Oropeza*, 2026 WL 1597192, at *8 n.6.

*Sanchez Herrera* also concluded, on several additional grounds, that the declaratory judgment could not be given preclusive effect at all. 2026 WL 800721, at *9–11. The Court need not reach those questions, or the effect, if any, of *Mullin v. Doe*, 146 S. Ct. 2121 (2026). For present purposes, the Court assumes without deciding that a person who was a member of NTPSA while the *NTPSA* litigation was pending stands in privity with NTPSA and may invoke the declaratory judgment against the government. But even on that assumption, Petitioners have not made the required showing.

As the parties invoking preclusion, Petitioners bear the burden of establishing it applies. *See Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). As movants seeking emergency injunctive relief, they must also make a "clear showing" that they are entitled to the relief they seek. *Winter*, 555 U.S. at 22.

Privity of the kind Petitioners assert rests on representation. An organization that sues on behalf of its members represents those members' interests in the litigation. That representation is what permits the members to share in, and be bound by, the resulting judgment. *See Gospel Missions*, 328 F.3d at 557; *Tahoe-Sierra*, 322 F.3d at 1081–82.

That rationale presupposes that the nonparty was a member, and thus represented, while the litigation was pending. A person who joins an organization after a judgment has been entered was not represented in the proceedings that produced it. Allowing such a person to invoke the judgment offensively against the government would permit what *Mendoza* forbids: binding the government to an adverse ruling at the instance of a litigant who was a stranger to the case in which it was decided. 464 U.S. at 162. That is why the

court in *Sanchez Herrera* asked whether the petitioner had been a member when the *NTPSA* complaint was filed or when the *NTPSA* court entered declaratory judgment. 2026 WL 800721, at *10 n.7.

The Ninth Circuit's statement that relief could not be limited to NTPSA members as of the date the complaint was filed, *NTPSA*, 166 F.4th at 767, does not suggest otherwise. That statement concerned the scope of the APA set-aside remedy, which the Supreme Court stayed. It did not address which nonparties may invoke the separate declaratory judgment as a matter of issue preclusion.

Petitioners have not shown they are members of NTPSA. Each Petitioner submitted a declaration stating, in a single sentence, that he or she is a member of the National TPS Alliance. (Doc. 1-1 at 21 ¶ 11 (Rodriguez Leal); *id.* at 25 ¶ 11 (Chavez Semprun); *id.* at 29 ¶ 10 (Garcia Bolivar); *id.* at 33 ¶ 8 (Marin Espinoza).) Counsel's declaration reports that each Petitioner told him the same thing during video conferences on August 10 and 12, 2026. He also attests that no Petitioner is presently able to provide documentary evidence of membership. (*Id.* at 2–3 ¶¶ 6, 8, 9, 11.) The exhibits the Application cites in support of membership (Doc. 2 at 5, 7, 9) are USCIS notices concerning Petitioners' TPS applications and re-registration, and none mentions NTPSA. (Doc. 1-1 at 2–3 ¶¶ 4–5, 7, 10; *id.* at 6, 8, 10–11, 13.) Petitioners have not filed any membership record, confirmation from NTPSA, or other documentation of membership. That is so even though three Petitioners attest they gave counsel every document in their possession relating to their NTPSA membership. (*Id.* at 21 ¶ 12; *id.* at 29–30 ¶ 10; *id.* at 33 ¶ 8.)

Most significantly, there is no evidence of when any Petitioner became a member. Neither Petitioners' declarations nor counsel's declaration says when or how any Petitioner joined NTPSA. Each assertion of membership is in the present tense. Each was made in declarations executed on August 25 and 27, 2026, more than eight months after *NTPSA* court entered declaratory judgment. (*Id.* at 22, 26, 30, 35.) The record therefore contains no evidence that any Petitioner was a member of NTPSA when NTPSA filed suit on February 19, 2025, or when the *NTPSA* court entered declaratory judgment on December

10, 2025.

The Court does not discount Petitioners' sworn statements merely because they are self-serving. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015). But Petitioners must make a clear showing on each element of their preclusion theory. A present-tense, single-sentence assertion of membership does not clearly establish that Petitioners were represented in the NTPSA litigation. That is especially so where the assertion comes with no detail about when or how membership was obtained and no corroborating record from NTPSA.

*Bello Oropeza* does not require a different result. There, the petitioners submitted evidence of membership, and the court held the respondents had waived any challenge to privity by failing to address it. 2026 WL 1597192, at *4. Indeed, whether a petitioner has carried the burden of establishing privity is a record-specific inquiry, and the *Bello Oropeza* court did not address when the petitioners' membership began.

Without evidence that they were members of NTPSA during the *NTPSA* litigation, Petitioners have not shown that they were parties to the *NTPSA* judgment or in privity with one. Their attempt to bind Respondents to that judgment is therefore an attempt to use nonmutual offensive collateral estoppel against the government, which *Mendoza* forecloses. 464 U.S. at 162. Petitioners accordingly have not shown a likelihood of success on their claim that § 1254a(d)(4) bars their detention. For the same reason, they have not raised serious questions going to the merits of that claim. Petitioners' motion must therefore be denied. *See DISH Network Corp. v. FCC*, 653 F.3d 771, 776–77 (9th Cir. 2011) (explaining that a movant must demonstrate it meets all four *Winter* factors).

Because the Court's ruling rests on the absence of evidence that Petitioners were members of NTPSA while the *NTPSA* litigation was pending, the denial is without prejudice. If evidence develops showing any Petitioner is a member of NTPSA, including evidence of when that Petitioner's membership began, that Petitioner may renew the motion.

. . . .

Accordingly,

**IT IS ORDERED denying without prejudice** Petitioners' Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction. (Doc. 2.)

**IT IS FURTHER ORDERED** any Petitioner may file a renewed motion for a temporary restraining order or preliminary injunction if evidence develops showing he or she is a member of the National TPS Alliance, including evidence establishing when that membership began.

Dated this 14th day of October, 2026.

John C. Hinderaker
United States District Judge